**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 04-767** |
| **v.** | **DATE FILED: _____** |
| | **VIOLATIONS:** |
| **BENJAMIN TON,** | |
| a/k/a "BAO," | **21 U.S.C. § 848 (continuing criminal** |
| a/k/a "STEVE NORTON," | **enterprise - 1 count);** |
| **SERGIO CALDERA,** | **21 U.S.C. § 963 (conspiracy to import** |
| a/k/a "THE MEXICAN GUY," | **marijuana and MDMA - 1 count);** |
| **XUYEN BAO VO,** | **18 U.S.C. § 1956(h) (conspiracy to** |
| a/k/a "JOHN," | **launder monetary instruments - 1 count);** |
| **PHUC VINH VO** | **21 U.S.C. § 846 (conspiracy to distribute** |
| **DIANA RIVERA** | **marijuana and MDMA - 1 count);** |
| **LENA LOAN LE** | **21 U.S.C. § 841(a)(1) (possession of** |
| **THUONG MINH LE,** | **methamphetamine and MDMA with** |
| a/k/a "B.I.G.," | **intent to distribute - 1 count);** |
| a/k/a "TONY," | **21 U.S.C. § 841(a)(1) (possession of** |
| a/k/a "LON," | **MDMA with intent to distribute - 22** |
| **SUONG THACH,** | **counts)** |
| a/k/a "X-MEN," | **21 U.S.C. § 841(a)(1) (possession of** |
| a/k/a "XUAN," | **marijuana with intent to distribute - 25** |
| **THA THACH,** | **counts);** |
| a/k/a "HUNG," | **21 U.S.C. § 860(a) (distribution of MDMA** |
| **THUY A. LE,** | **and methamphetamine within 1000' of a** |
| **TOAN KIM,** | **school with intent to distribute - 1 count);** |
| a/k/a "THE SKINNY GUY," | **21 U.S.C. § 841(a)(1) (distribution of** |
| a/k/a "SCOOBY," | **marijuana - 3 counts);** |
| **DANH MAC,** | **21 U.S.C. § 841(a)(1) (distribution of** |
| **CUONG PHAM,** | **MDMA - 3 counts);** |
| a/k/a "C.M.D.," | **18 U.S.C. § 894(a) (conspiracy to collect** |
| a/k/a "CAMDEN'S MOST** | **extensions of credit by extortionate** |
| **DANGEROUS,"** | **means - 1 count)** |
| **NHAN VO,** | **18 U.S.C. § 922(l) (importation of a** |
| a/k/a "GIA," | **firearm - 1 count);** |
| a/k/a "THE LITTLE BOY," | **18 U.S.C. § 2 (aiding and abetting);** |
| **MICHAEL NGUYEN,** | |
| a/k/a "TURTLE," | |
| a/k/a "MIKE," | |
| a/k/a "M," | |

NICK LAY,                                        **Notice of Forfeiture (21 U.S.C. §853);**
PHENG SENG,                                      **Notice of Forfeiture (18 U.S.C. § 982);**
    a/k/a "PANG,"            **Notice of Forfeiture (18 U.S.C. § 981**
TRI C. DOAN,                                     **and 28 U.S.C. § 2461)**
SANG MINH TIEU
ROBERT HAMPTON, JR.,
    a/k/a "ROB,"
NHUT QUANG LE,
    a/k/a "NICK,"
KEVIN LE,
HIEU BUI,
SOMBATH BUNKEUT,
    a/k/a "SAM,"
HIEU CHAU,
    a/k/a "HIEU GA"
CHAN NGUYEN,
    a/k/a "PETER"

## SUPERSEDING INDICTMENT

## COUNT ONE

**(Continuing Criminal Enterprise)**

**THE GRAND JURY CHARGES THAT:**

## INTRODUCTION

### The Ton Organization

1.      During the period from in or about December 2002 through on or about

November 7, 2004, BENJAMIN TON organized, supervised, and managed an international drug

trafficking organization (hereinafter referred to as the "Ton Organization").

2.      The purposes of the Ton Organization were to import large quantities of

controlled substances from Canada into the United States and to distribute them for profit to a

customer base of drug traffickers in the United States, located in the Eastern District of

Pennsylvania and elsewhere.

a.      The Ton Organization imported Canadian-grown marijuana, a Schedule I controlled substance, typically in loads of 100 to 300 pounds, at prices typically ranging from $1,700 per pound to $2,700 (U.S.) per pound.  Thus, a 100-pound load of marijuana would cost the Ton Organization $170,000 to $270,000.  Some of the marijuana was grown outdoors, and other marijuana was grown indoors using hydroponic techniques.  While much of the marijuana was standard grade, some loads consisted of premium grades; pricing varied in correspondence to the grades involved.  Marijuana loads were smuggled into the United States from Canada by or on behalf of the Ton Organization on a more or less weekly basis.  During the period of the importation conspiracy, the Ton Organization imported more than 10,000 kilograms (22,000 pounds) of marijuana from Canada into the United States for subsequent distribution in the United States.

b.      In addition to marijuana, the Ton Organization imported 3,4-methylenedioxymethamphetamine, commonly known as "MDMA" or "ecstasy," a Schedule I controlled substance.  The MDMA came in pill form, typically in loads consisting of 40,000 to 60,000 pills at a time, which were purchased at prices ranging from $2.25 to $3.00 (U.S.) per pill.  Thus, if the Ton Organization purchased a shipment of 40,000 MDMA pills, the cost would range from $90,000 to $120,000.  The MDMA pills which the Ton Organization trafficked were made by criminals, were not of pharmaceutical grade, and were not made to exacting specifications.  These pills usually contained MDMA, but also contained other controlled substances including, but not limited to, methamphetamine, a Schedule II controlled substance.  During the period of the importation conspiracy, the Ton Organization imported in excess of

3

300,000 MDMA pills from Canada into the United States for subsequent distribution in the

United States.

          c.      Occasionally, the Ton Organization purchased marijuana and/or MDMA

from another drug trafficking organization in Philadelphia.  However, members of the Ton

Organization understood that the other Philadelphia organization was obtaining the marijuana

and/or MDMA directly from the same group of Canadian sources that was supplying the Ton

Organization. Consequently, the Ton Organization was able to offer product consistency to its

customer base.

**The Canadian Suppliers and Transporters**

        3.      The Ton Organization dealt with Canadian-based suppliers who generally

operated independently from one another and are not charged in this superseding indictment.

The Ton Organization sought the best deal from competing drug suppliers.

        4.      On many occasions, the marijuana and MDMA shipments were smuggled into the

United States from Canada by truck drivers employed by transportation agents who worked for

one or more of the Canadian drug suppliers.  On other occasions, the MDMA shipments were

smuggled into the United States in hidden spaces in cars, vans, and small trucks, by individuals

known and unknown to the grand jury who were working for, or under the direction of, the Ton

Organization.

        5.      The money to pay the Canadian drug dealers was smuggled back into Canada

from the United States by money couriers known and unknown to the grand jury.  Some money

couriers worked for the Canadian suppliers.  Other money couriers worked directly for the Ton

Organization.   Sometimes the truck drivers who worked for the transportation agents also

4

served as money couriers on return trips to Canada.

## Structure of the Ton Organization

6.      Defendant BENJAMIN TON was the leader of the Ton Organization.  He

operated principally from Philadelphia and Folcroft in the Eastern District of Pennsylvania and,

beginning in the autumn of 2003, also from Sicklerville in the District of New Jersey.  During the

period of the superseding indictment, TON directed, supervised, and managed the activities of

various persons known to the grand jury, who comprised the Ton Organization, including

SERGIO CALDERA, XUYEN BAO VO, PHUC VINH VO, DIANA RIVERA, LENA LOAN

LE, and THUONG MINH LE, each of whom is a defendant in one or more of the counts of this

superseding indictment, and others known and unknown to the grand jury.

7.      TON personally negotiated the prices the Ton Organization would pay for drug

loads to be smuggled into the United States from Canada.  TON would choose among offers

received from various Canadian drug supply sources, and would negotiate and approve the

methods for smuggling loads of drugs from Canada into the United States.  TON recruited and

paid subordinates to work for the Ton Organization in the United States and Canada, supervised

and directed the pick-up of drug loads that were smuggled into the United States, and approved

the locations, including his own home in Folcroft, Pennsylvania, where the drugs would be

hidden or stashed pending distribution for profit to drug traffickers in the United States.  TON

determined the sales prices to be charged drug dealers who were customers of the TON

Organization.  TON oversaw and directed the sale of controlled substances and the collection of

payment from drug traffickers in the United States, and coordinated the smuggling back to

Canada of payment monies for the drug shipments.  On occasion, TON made the drug pick-ups, sales, and deliveries himself.  TON sometimes collected the money payments himself and personally delivered the money to Canada.  TON designated which member or members of the Ton Organization would be in charge of operations during periods when he would be out of the country or otherwise unavailable.

8.     The Ton Organization maintained a representative in Toronto, Canada, known to the grand jury, who solicited competing prices from the Canadian suppliers, conveyed these quotes to TON, and otherwise assisted and facilitated the importation conspiracy by helping to coordinate such matters as the consolidation of loads, the selection of transportation agents, the payment of monies owed to the suppliers, and the smuggling into Canada of the payment monies. This broker received commissions based upon the number of units of the various drug shipments he brokered for sale and also was allowed to take equity positions in certain loads, i.e., a certain portion of the load would be deemed to be owned by the broker and the Ton Organization would sell it on behalf of the broker to its drug trafficking customers in the United States, with the proceeds going to the broker.

9.     Defendant SERGIO CALDERA worked for the Ton Organization under the direction and supervision of BENJAMIN  TON.  CALDERA began working for the Ton Organization in or about January of 2003.  CALDERA was compensated in various ways, including being a salaried employee, receiving commissions (usually in the range of 2 %) on the sums of United States currency he smuggled into Canada, and by being permitted to take equity positions in portions of drug shipments, particularly shipments of MDMA, smuggled into the United States from Canada.  CALDERA operated principally from his residence in Philadelphia

6

in the Eastern District of Pennsylvania.  Among other things, CALDERA:

a.    met truck drivers who had smuggled drug loads across the international border into the United States, took possession of the drugs from them, and transported the drugs back to the Philadelphia area, where they were hidden pending sale to the Ton Organization's drug trafficking customers;

b.    delivered drug loads to the customers, collected money from the customers, and returned it to TON; and

c.    smuggled money into Canada in payment for drug loads, delivering hundreds of thousands of dollars at a time to the Ton Organization's broker in Toronto and also directly to Canadian suppliers.

10.    Defendant PHUC VINH VO ("PHUC VO") worked for the Ton Organization under the direction and supervision of BENJAMIN  TON.   PHUC VO began working as an employee of TON in or about December of 2002 and operated principally from his home in Southwest Philadelphia.  PHUC VO developed and accumulated a customer base among drug traffickers in the Philadelphia and southern New Jersey area and sold large quantities of marijuana and MDMA to these traffickers on behalf of the Ton Organization.  PHUC VO was compensated in various ways, including commissions from the Ton Organization based on the volume of the sales he generated.  PHUC VO was also permitted to take equity positions in certain drug shipments smuggled into the United States from Canada for sale by the Ton Organization.   In addition, among other things,  PHUC VO:

a.    met truck drivers who had smuggled drug loads across the international border into the United States, received the drug shipments from them,

transported these drugs to the Philadelphia area, and stored or stashed

them in various locations, including his home in Philadelphia;

  b.  distributed drugs, both MDMA and marijuana, collected money for the

drugs, and delivered the money to TON; and

  c.  smuggled cash into Canada to pay the Canadian sources of drugs.

On certain occasions, including late September of 2004, when TON was in Vietnam or Canada,

he placed PHUC VO in charge of the Ton Organization's activities.

  11.  Defendant XUYEN BAO VO (XUYEN VO") worked for the Ton Organization

under the direction and supervision of BENJAMIN TON.   XUYEN VO began working for TON

as a salaried employee in or around January of 2004 and operated principally from Philadelphia

and Eddystone, Pennsylvania.   XUYEN VO's jobs for the Ton Organization included:

  a.   meeting truck drivers who had smuggled drug loads across the

international border into the United States, receiving drug shipments from

the smugglers, transporting the drugs to the Philadelphia area, and hiding

or stashing them in various places, including his home in Eddystone,

Pennsylvania;

  b.  delivering drugs to some of the Ton Organization's drug trafficking

customers, collecting the money from the drug customers, returning the

money to TON; and

  c.  serving as a money courier for the Ton Organization, smuggling hundreds

of thousands of dollars of drug proceeds back to Canada and delivering the

money to the Ton Organization's broker in Toronto and directly to

Canadian suppliers.

XUYEN VO was paid a commission for his money laundering activities, usually about 2 % of

the sum of money laundered per occasion.  XUYEN VO was placed in charge of the Ton

Organization by TON on at least one occasion, in October of 2004, when TON was away.

XUYEN VO was also allowed to add his own mark-up on drugs he sold on behalf of the Ton

Organization.

12.    Beginning in or around August 2004, Defendant DIANA RIVERA worked for the

Ton Organization under the general supervision of BENJAMIN TON and the direct supervision

of SERGIO CALDERA.    RIVERA was a money laundering courier employed by the Ton

Organization.   RIVERA smuggled hundreds of thousands of dollars, constituting the purchase

price for drug loads, from the United States, including the Philadelphia area, to Canada.  During

the period from in or about August 2004 up to and including November 2004, RIVERA made

over four money smuggling trips to Canada.  In Canada, RIVERA delivered the smuggled

money to the Ton Organization's broker in Toronto and to a Canadian supplier, known to the

grand jury,  in Toronto.  RIVERA was paid a commission by the Ton Organization for this

smuggling activity.  RIVERA also smuggled more than 100,000 of MDMA pills from Canada

into the United States on behalf of the Ton Organization on the return portions of certain money

laundering trips, and delivered the pills to CALDERA in the Philadelphia area.  RIVERA

operated principally from Philadelphia, Pennsylvania.

13.    Defendant LENA LOAN LE, formerly married to BENJAMIN TON, worked for

the Ton Organization under the direction and supervision of TON during the period of this

superseding indictment.  LENA LOAN LE assisted the Ton Organization by opening bank

accounts and safe deposit boxes at financial institutions in the Eastern District of Pennsylvania and New Jersey.  LENA LOAN LE placed these bank accounts and safe deposit boxes in her own name exclusively to launder and conceal the Ton Organization's cash from the sale of drugs.  LENA LOAN LE made cash deposits and withdrawals to and from the bank accounts and safe deposit boxes pursuant to TON'S direction, when cash was needed to pay for drug loads or otherwise to promote the on-going conduct of the Ton Organization's drug importation and trafficking activities.  LENA LOAN LE operated principally from Philadelphia and from her residences in Folcroft in the Eastern District of Pennsylvania and, beginning in the autumn of 2003, in Sicklerville in the District of New Jersey.

14.     Defendant THUONG MINH LE worked for the Ton Organization under the direction and supervision of BENJAMIN TON during the period from Autumn of 2003 to Autumn of 2004.   THOUNG MINH LE was a large-scale marijuana and MDMA distributor and customer of the Ton Organization.  Beginning in early 2003, THUONG MINH LE recurrently obtained large quantities of marijuana and MDMA from the Ton Organization.  THUONG MINH LE's drug distribution operations were based primarily in Louisiana and Philadelphia. During the course of the conspiracy, THUONG MINH LE purchased and partially paid for in excess of 100 kilograms of marijuana and in excess of 90,000 MDMA pills from the Ton Organization.  These drugs were delivered to THUONG MINH LE in Philadelphia by BENJAMIN TON, PHUC VO, and/or XUYEN VO.  Sometimes, drugs were delivered to THUONG MINH LE in Louisiana.  In early 2004, when another drug organization failed to pay drug debts owed to the Ton Organization, THUONG MINH LE and PHUC VO, at the direction of TON, stole MDMA from that organization to help minimize the Ton Organization's loss.

When TON traveled to Vietnam in July of 2004 and was unavailable to run the Ton

Organization, he placed THUONG MINH LE in charge of MDMA distribution by the Ton

Organization.

## CONTINUING CRIMINAL ENTERPRISE

15.     From in or about December, 2002 through on or about November 7, 2004, in the

Eastern District of Pennsylvania and elsewhere, defendant

**BENJAMIN TON,**
**a/k/a "BAO,"**
**a/k/a "STEVE NORTON,"**

engaged in a continuing criminal enterprise, as defined in Title 21, United States Code, Section

848(a), in that:

a.      BENJAMIN TON did knowingly and intentionally commit multiple

felony violations of subchapters I and II of Chapter 13 of Title 21, United States Code, and

which were a part of a continuing series of violations of subchapters I and II of Chapter 13 of

Title 21, United States Code, including, but not limited to, Counts 2, 4, 5, and 27 of this

superseding indictment;

b.      the series of violations described in paragraph (a) were undertaken by

BENJAMIN TON in concert with five or more persons, known and unknown to the grand jury,

with respect to whom BENJAMIN TON occupied a position of organizer, supervisor, and

manager; and

c.      BENJAMIN TON obtained substantial income and resources from the

violations described in paragraphs (a) and (b) above.

In violation of Title 21, United States Code, Section 848.

11

## COUNT TWO

### (Conspiracy to Import Marijuana and MDMA)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    From in or about December 2002 through on or about November 7, 2004, in the Eastern District of Pennsylvania and elsewhere, defendants

> **BENJAMIN TON,**
> **a/k/a "BAO,"**
> **a/k/a "STEVE NORTON,"**
> **SERGIO CALDERA,**
> **a/k/a "THE MEXICAN GUY,"**
> **XUYEN BAO VO,**
> **a/k/a "JOHN,"**
> **PHUC VINH VO, and**
> **DIANA RIVERA,**

conspired and agreed together, and with other persons known and unknown to the grand jury, to knowingly and intentionally import a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, weighing more than 1,000 kilograms and a mixture and substance containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as "MDMA" and/or "ecstasy," a Schedule I controlled substance, into the United States from a place outside thereof, that is, Canada, in violation of Title 21, United States Code, Sections 952(a), 960(a), 960(b)(1)(G), and 960(b)(3).

### MANNER AND MEANS

It was part of the conspiracy that:

2.    Defendants BENJAMIN TON, SERGIO CALDERA, XUYEN BAO VO, PHUC VINH VO, and DIANA RIVERA, directed the importation and imported illegal drugs, as set forth in paragraphs 1 through 12 of Count One, which are re-alleged and incorporated herein.

3.     When one or more of the co-conspirators took possession of imported drugs from the transportation agent who smuggled them across the United States/Canada border, the drugs were brought to the Eastern District of Pennsylvania, where, pending sale to the Ton Organization's customers, the drugs would be hidden in PHUC VO's Southwest Philadelphia residence, SERGIO CALDERA's Philadelphia residence, XUYEN BAO VO's Eddystone residence, DIANA RIVERA's Philadelphia residence, or BENJAMIN TON's Folcroft residence. Beginning in late October 2003, when BENJAMIN TON took up residence in Sicklerville, New Jersey, relatively small quantities of drugs were hidden there on occasion. The vast majority of drugs remained hidden in the Eastern District of Pennsylvania and were transported to the distribution sites for sale to the Ton Organization's customers.

All in violation of Title 21, United States Code, Section 963.

## COUNT THREE

### (Conspiracy to Launder Monetary Instruments)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       From in or about December 2002 through on or about November 7, 2004, in

Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendants

> **BENJAMIN TON,**
> **a/k/a "BAO,"**
> **a/k/a "STEVE NORTON,"**
> **SERGIO CALDERA,**
> **a/k/a "THE MEXICAN GUY,"**
> **XUYEN BAO VO,**
> **a/k/a "JOHN,"**
> **PHUC VINH VO,**
> **DIANA RIVERA, and**
> **LENA LOAN LE,**

conspired and agreed together and with other persons known and unknown to the grand jury, to

knowingly transport and transfer monetary instruments and funds, that is, more than $25,000,000

of United States currency from a place in the United States to a place outside the United States,

that is, Canada, with the intent to promote the carrying on of specified unlawful activity,

specifically, the importation of controlled substances in violation of 21 U.S.C. § 952(a) and the

distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1), all in violation of Title

18, United States Code, Section 1956(a)(2)(A).

### MANNER AND MEANS

It was part of the conspiracy that:

2.       Defendants BENJAMIN TON, SERGIO CALDERA, XUYEN VO, PHUC  VO,

DIANA RIVERA, and LENA LOAN LE, participated in the generation of cash proceeds from

the sale of illegal drugs, as set forth in paragraphs 1 through 13 of Count One, which are re-alleged and incorporated herein.

3.　　　BENJAMIN TON and members of the Ton Organization, including SERGIO CALDERA, PHUC VO, and XUYEN VO, collected cash payments for drugs distributed by the Ton Organization to its drug trafficking customer base in the Eastern District of Pennsylvania and elsewhere.  The co-conspirators consolidated the cash payments in their residences in the Eastern District of Pennsylvania, before transferring it to TON's residence, where it would be counted and packaged in preparation for smuggling across the border from the United States into Canada, for delivery to the Ton Organization's Canadian drug suppliers.  Until late October 2003, TON resided in Folcroft in the Eastern District of Pennsylvania.  After October 2003, TON resided in Sicklerville, New Jersey.

4.　　　The cash drug proceeds were typically bundled and concealed inside a secret compartment in a motor vehicle or in voids in the body of the motor vehicle used in the smuggling operation.

5.　　　Sometimes the cash drug proceeds were delivered in the United States to representatives of the Canadian suppliers or Canadian transportation agents, who smuggled the money into Canada.  Other times the cash drug proceeds were smuggled into Canada by members of the Ton Organization, including CALDERA, PHUC VO, XUYEN VO, and RIVERA.  Sometimes TON smuggled the cash drug proceeds into Canada to pay the Canadian suppliers.  Members of the Ton Organization normally smuggled cash drug proceeds to Canada by driving from Philadelphia via the Pennsylvania Turnpike to Interstate 81, to the New York Thruway, traveling west to the international border, and crossing into Canada at Buffalo or

15

Niagara Falls.

6.      The courier who smuggled the money into Canada normally was paid a commission based on a percentage of the sum of cash drug proceeds transported into Canada.

7.      TON maintained a safe deposit box in which he would hold sums of cash drug proceeds.  TON kept the safe deposit box in the name of LENA LOAN LE.  When TON needed cash to make a payment for drugs, he would direct LENA LOAN LE to go to the safe deposit box in her sole name and withdraw the cash needed to conduct the continuing criminal enterprise he operated.

In violation of Title 18, United States Code, Section 1956(h).

## COUNT FOUR

**(Conspiracy to Distribute Marijuana and MDMA)**

**THE GRAND JURY CHARGES FURTHER THAT:**

1.      From in or about December 2002 through on or about November 7, 2004, in the

Eastern District of Pennsylvania and elsewhere, defendants

> **BENJAMIN TON,**
>       **a/k/a "BAO,"**
>       **a/k/a "STEVE NORTON,"**
> **SERGIO CALDERA,**
>       **a/k/a "THE MEXICAN GUY,"**
> **XUYEN BAO VO,**
>       **a/k/a "JOHN,"**
> **PHUC VINH VO,**
> **THUONG MINH LE,**
>       **a/k/a "B.I.G.,"**
>       **a/k/a "TONY,"**
>       **a/k/a "LON,"**
> **SUONG THACH,**
>       **a/k/a "X-MEN,"**
>       **a/k/a "XUAN,"**
> **THA THACH,**
>       **a/k/a "HUNG,"**
> **THUY A. LE,**
> **TOAN KIM,**
>       **a/k/a "THE SKINNY GUY,"**
>       **a/k/a "SCOOBY,"**
> **DANH MAC,**
> **CUONG PHAM,**
>       **a/k/a "C.M.D."**
>       **a/k/a "CAMDEN'S MOST DANGEROUS,"**
> **NHAN VO,**
>       **a/k/a "GIA,"**
>       **a/k/a "THE LITTLE BOY,"**
> **MICHAEL NGUYEN,**
>       **a/k/a "TURTLE,"**
>       **a/k/a "MIKE,"**
>       **a/k/a "M,"**
> **NICK LAY,**

**PHENG SENG,**
      **a/k/a "PANG,"**
**TRI C. DOAN,**
**SANG MINH TIEU,**
**ROBERT HAMPTON, JR.,**
      **a/k/a "ROB,"**
**NHUT QUANG LE,**
      **a/k/a "NICK,"**
**KEVIN LE,**
**HIEU BUI,**
**SOMBATH BUNKEUT,**
      **a/k/a "SAM,"**
**HIEU CHAU,**
      **a/k/a "HIEU GA,"**

conspired and agreed together, and with other persons known and unknown to the grand jury, to

knowingly and intentionally distribute a mixture and substance containing a detectable amount of

marijuana, a Schedule I controlled substance, weighing more than 1,000 kilograms, and a

mixture and substance containing a detectable amount of 3,4-methylenedioxymethamphetamine,

commonly known as "MDMA" and/or "ecstasy," a Schedule I controlled substance, in violation

of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

## MANNER AND MEANS

It was part of the conspiracy that:

2.      Defendants BENJAMIN TON,  SERGIO CALDERA, XUYEN BAO VO, PHUC

VINH VO, and THUONG MINH LE, directed and implemented the distribution of illegal drugs,

as set forth in paragraphs 1 through 11 and 14 of Count One, which are re-alleged and

incorporated herein.

3.      The Ton Organization developed and maintained a large and stable customer base

consisting of large-scale drug distributors, including but not limited to defendants SUONG

THACH, THA THACH, THUY A. LE, DANH MAC, TOAN KIM, NHAN VO, MICHAEL NGUYEN, NICK LAY, PHENG SENG, TRI C. DOAN, NHUT QUANG LE, KEVIN LE, CUONG PHAM, SANG MINH TIEU, HIEU BUI, ROBERT HAMPTON, JR., SOMBATH BUNKEUT, and HIEU CHAU ("customer co-conspirators"), who operated not only from the Philadelphia area, but other areas of the United States as well.  As set forth below, these customer co-conspirators purchased marijuana and/or MDMA in bulk quantities at wholesale prices from the Ton Organization and then resold the drugs for profit to other drug dealers known and unknown to the grand jury.  The customer coconspirators provided a consistent demand for marijuana and MDMA from the Ton Organization that allowed the Ton Organization to prosper, expand, and function internationally during the period of the conspiracy as a high volume wholesale drug distribution enterprise.  Defendants SUONG THACH, THA THACH, THUY A. LE, DANH MAC, TOAN KIM, NHAN VO, MICHAEL NGUYEN, NICK LAY, PHENG SENG, TRI C. DOAN, NHUT QUANG LE, KEVIN LE, CUONG PHAM, SANG MINH TIEU, HIEU BUI, ROBERT HAMPTON, JR., SOMBATH BUNKEUT, and HIEU CHAU knew and understood that the marijuana and MDMA would be imported in quantity from Canada on a regular on-going basis, inquired about the current availability of the drug or drugs they wanted to buy, inquired when the next shipment would arrive in the event that the Ton Organization was momentarily out of inventory, and knew that they were part of a large customer base, whose members were dependant for their own financial success upon the success of the Ton Organization and also of each other, inasmuch as the Ton Organization's large stable customer base gave them access to large quantities of marijuana and MDMA of high quality at wholesale prices on a consistent and on-going basis.

19

4.      The Ton Organization distributed the marijuana and MDMA to the customer coconspirators on a full, or at least partial, consignment basis, with payment for the drugs supplied to be made after the customer co-conspirator had resold a sufficient portion of his consignment to be able to pay the purchase price.  Each of the customer coconspirators purchased controlled substances on consignment from the Ton Organization during the course of the conspiracy.

5.      Codes were used within the Ton Organization when talking about drug transactions.   These codes were commonly understood and used by the customer co-conspirators as well as TON, CALDERA, PHUC VO, XUYEN VO, and THUONG MINH LE.  Marijuana was referred to by various terms, including but not limited to "the big ones," "the Van stuff," "Heineken," "cakes," "blueberry," "AAA," and "purple haze."  Likewise, MDMA was referred to by various terms, including, but not limited to "the small ones," "candies," and various so-called brand names deriving from logos stamped on the pills, such as "torch," "puppy," "strawberry," "music note," "Mercedes," "Rolex," "squares," and "Christmas tree."  Money to pay for drug consignments was referred to as "the papers."  Couriers who smuggled drugs from Canada into the United States and payment money from the United States back to Canada were referred to as "horses."  The purpose for using these codes was to disguise and conceal the actual activities of the co-conspirators from discovery by outsiders, especially members of law enforcement who might overhear these conversations through court-ordered electronic surveillance or otherwise.

6.      Defendant SUONG THACH was a large-scale marijuana and MDMA distributor and customer of the Ton Organization, who purchased marijuana and MDMA from it for

20

distribution at a profit to other drug dealers throughout the period of the conspiracy. During the course of the conspiracy, SUONG THACH purchased and paid for in excess of 1,000 kilograms of marijuana and in excess of 40,000 MDMA pills from the Ton Organization. SUONG THACH purchased drugs on consignment and used the Ton Organization's codes in drug conversations. From the beginning of the conspiracy in December of 2002 until late April of 2003, SUONG THACH led a drug distribution crew that included defendants THA THACH and TOAN KIM, among others. This crew disbanded in late April of 2003, after which time SUONG THACH and his former crew members continued their drug distribution activities, while maintaining their individual supply relationships with the Ton Organization. SUONG THACH normally received drug distributions in Philadelphia directly from BENJAMIN TON, particularly in the period before and up to late April 2003. SUONG THACH also received drug deliveries in Philadelphia from PHUC VO and XUYEN VO. SUONG THACH's distribution operation was based primarily in Philadelphia.

7.       Defendant THA THACH, a/k/a "HUNG," was a large-scale marijuana and MDMA distributor and customer of the Ton Organization, who purchased marijuana and MDMA for distribution at a profit to other drug dealers from December 2002 to November 7, 2004. From December 2002 through late April 2003, THA THACH aided and abetted SUONG THACH in distributing drugs that SUONG THACH received from the Ton Organization. After April 2003, THA THACH operated his own drug distribution business, which was based principally in the Camden, New Jersey area, with drug deliveries normally being made to him in Philadelphia and Camden, New Jersey, by BENJAMIN TON, TOAN KIM, PHUC VO, and/or XUYEN VO. THA THACH purchased drugs on consignment and used the Ton Organization's

21

codes in drug conversations.  During the period from May 2003 through November 7, 2004, THA THACH purchased and paid for in excess of 300 kilograms of marijuana and in excess of 1,000 MDMA pills from the Ton Organization.  THA THACH was aided and abetted in his drug distribution business by THUY A. LE.  Following his split with SUONG THACH in late April 2003, THA THACH purchased and paid for in excess of 300 kilograms of marijuana and several thousand MDMA pills from the Ton Organization.

8.      Defendant THUY A. LE was an associate of THA THACH, who aided and abetted THACH's marijuana and MDMA distribution activities with the Ton Organization by, among other things, ordering drugs, receiving drug distributions, and making monetary payments.  THUY A. LE purchased drugs on consignment and used the Ton Organization's codes in drug conversations.  Drug deliveries were made to THUY A. LE by BENJAMIN TON, TOAN KIM, PHUC VO, and/or XUYEN VO.  THUY A. LE operated primarily from the Camden, New Jersey area.

9.      Defendant TOAN KIM was a large-scale marijuana and MDMA distributor and customer of the Ton Organization, who purchased marijuana and MDMA from it for distribution at a profit to other drug dealers throughout the period of the conspiracy.  From December 2002 through late April 2003, KIM was associated with SUONG THACH in THACH's drug distribution activities.  After SUONG THACH's crew disbanded, KIM continued to distribute drugs supplied by the Ton Organization, basing his operations in Philadelphia.  KIM purchased drugs on consignment and used the Ton Organization's codes in drug conversations.  From May 2003 to November 7, 2004, KIM purchased and at least partially paid for in excess of 25 kilograms of marijuana and in excess of 20,000 MDMA pills from the Ton Organization.  These

22

drugs were distributed to KIM in Philadelphia by PHUC VO, XUYEN VO, SERGIO

CALDERA, and/or BENJAMIN TON.

10.     Defendant DANH MAC was a large-scale marijuana and MDMA distributor and

customer of the Ton Organization, who recurrently purchased marijuana and MDMA from it for

distribution at a profit to other drug dealers throughout the period of the conspiracy.  Normally,

MAC received the drug distributions in Philadelphia or southern New Jersey, with the deliveries

being made to MAC by PHUC VO, BENJAMIN TON, and/or THUONG LE.  MAC purchased

drugs on consignment and used the Ton Organization's codes in drug conversations.  During the

course of the conspiracy, MAC purchased and paid for in excess of 700 kilograms of marijuana

and approximately 30,000 MDMA pills from the Ton Organization.  MAC's distribution

operation was based primarily in the Camden and southern New Jersey area, and he had

customers in the southern United States.

11.     Defendant CUONG PHAM was a marijuana and MDMA distributor and customer

of the Ton Organization, who, beginning in January or February of 2004, recurrently purchased

marijuana and MDMA from it for distribution at a profit to other drug dealers.  PHAM purchased

drugs on consignment and used the Ton Organization's codes in drug conversations.  During the

course of the conspiracy, PHAM purchased and paid for in excess of 13,000 MDMA pills, as

well as marijuana, from the Ton Organization, with delivery normally made to PHAM in

Philadelphia by PHUC VO.  CUONG PHAM's distribution operation was based primarily in the

southern New Jersey area.

12.     Defendant NHAN VO was a large-scale marijuana distributor and customer of the

Ton Organization, who purchased marijuana from it for distribution at a profit to other drug

23

dealers.  NHAN VO also occasionally distributed quantities of MDMA he received from the Ton

Organization.  NHAN VO purchased drugs on consignment and used the Ton Organization's

codes in drug conversations.  During the course of the conspiracy, NHAN VO purchased and

paid for in excess of 100 kilograms of marijuana from the Ton Organization, with delivery

normally made to NHAN VO in Philadelphia by BENJAMIN TON.  NHAN VO was particularly

active in 2003.  NHAN VO's distribution operation was based in Philadelphia and its suburbs.

     13.     Defendant MICHAEL NGUYEN was a large-scale marijuana distributor and

customer of the Ton Organization, who purchased marijuana from it for distribution at a profit to

other drug dealers.  NGUYEN also distributed MDMA that he obtained from the Ton

Organization.  NGUYEN participated actively in the conspiracy during 2003 and up until the

later part of April 2004 when he left the Philadelphia area.  NGUYEN was particularly active in

the conspiracy during early 2003.  NGUYEN purchased drugs on consignment and used the Ton

Organization's codes in drug conversations.  During the course of the conspiracy, NGUYEN

purchased and partially paid for in excess of 300 kilograms of marijuana from the Ton

Organization, with delivery normally made to NGUYEN in Philadelphia by PHUC VO.

NGUYEN's distribution operation was based in  Philadelphia.

     14.     Defendant NICK LAY was a marijuana and MDMA distributor and customer of

the Ton Organization, who, beginning in the winter of 2003, purchased marijuana and MDMA

from it for distribution at a profit to other drug dealers.  LAY purchased drugs on consignment

and used the Ton Organization's codes in drug conversations.  During the course of the

conspiracy, LAY purchased and paid for in excess of 100 kilograms of marijuana and in excess

of 3,000 MDMA pills from the Ton Organization, with delivery normally made to LAY in

Philadelphia by BENJAMIN TON, PHUC VO, and/or XUYEN VO.  LAY's distribution

operation was based primarily in the southern New Jersey area.

      15.    Defendant PHENG SENG  was a large-scale marijuana distributor and customer

of the Ton Organization, who, beginning in March 2004, purchased marijuana from it for

distribution at a profit to other drug dealers.  SENG also purchased MDMA from the Ton

Organization for distribution at a profit.  SENG purchased drugs on consignment and used the

Ton Organization's codes in drug conversations. During the course of the conspiracy, SENG

purchased and paid for in excess of 100 kilograms of marijuana from the Ton Organization, with

delivery normally made to SENG in Philadelphia by PHUC VO, BENJAMIN TON, and/or

XUYEN VO.  PHENG SENG's distribution operation was based in Philadelphia.

      16.    Defendant TRI C. DOAN was a large-scale marijuana and MDMA distributor and

customer of the Ton Organization, who, beginning in 2004, purchased marijuana and MDMA

from it for distribution at a profit to other drug dealers.  DOAN purchased drugs on consignment

and used the Ton Organization's codes in drug conversations.  During the course of the

conspiracy DOAN purchased and paid for in excess of 100 kilograms of marijuana and in excess

of 20,000 MDMA pills from the Ton Organization, with delivery normally made to DOAN in

Pennsylvania by TON or in Massachusetts by PHUC VO.  DOAN's distribution operation was

based primarily in Massachusetts.

      17.    Defendant SANG MINH TIEU was a large-scale MDMA dealer and customer of

the Ton Organization, who, beginning in April of 2004, purchased MDMA from it for

distribution at a profit to other drug dealers.  TIEU also purchased marijuana from the Ton

Organization and distributed it for profit.  TIEU purchased drugs on consignment and used the

Ton Organization's codes in drug conversations.  During the course of the conspiracy, TIEU purchased and paid for in excess of 20,000 MDMA pills from the Ton Organization, with delivery normally made in Philadelphia by TON or CALDERA. TIEU's distribution operation was based primarily in the Philadelphia area.

18.     Defendant ROBERT HAMPTON, JR. was a large-scale marijuana and MDMA dealer and customer of the Ton Organization who purchased marijuana and MDMA from the Ton Organization for distribution at a profit to other drug dealers.  HAMPTON made purchases from TOAN KIM, who usually received the drugs from PHUC VO.  HAMPTON also received drugs directly from BENJAMIN TON.  HAMPTON purchased drugs on consignment and used the Ton Organization's codes in drug conversations.  During the course of the conspiracy, HAMPTON purchased and paid for in excess of 5,000 MDMA pills from the Ton Organization, as well as quantities of marijuana.  HAMPTON's distribution operation was based primarily in Philadelphia area.

19.     Defendant NHUT QUANG LE was a large-scale MDMA distributor and customer of the Ton Organization, who, beginning in 2004, purchased MDMA from it for distribution at a profit to other drug dealers.  LE purchased drugs on consignment and used the Ton Organization's codes in drug conversations.  During the course of the conspiracy, LE purchased and partially paid for in excess of 15,000 MDMA pills from the Ton Organization, with delivery normally made to LE in Philadelphia or North Carolina by SERGIO CALDERA. LE's distribution operation was based primarily in North Carolina and Georgia.

20.     KEVIN LE was an MDMA distributor and customer of the Ton Organization, who purchased MDMA pills from it for distribution at a profit to other drug dealers in mid-2004.

26

KEVIN LE purchased drugs on consignment and used the Ton Organization's codes in drug conversations. During the course of the conspiracy, KEVIN LE purchased approximately 2,000 MDMA pills, as well as marijuana, from the Ton Organization, with delivery of the MDMA made by SERGIO CALDERA in Philadelphia. KEVIN LE's distribution operation was based in the southern United States.

21.     Defendant HIEU BUI was a marijuana and MDMA distributor and customer of the Ton Organization, who, beginning in early 2003, purchased marijuana and MDMA from it for distribution at a profit to other drug dealers. BUI purchased drugs on consignment and used the Ton Organization's codes in drug conversations. During the course of the conspiracy, BUI purchased and paid for in excess of 90 kilograms of marijuana and in excess of 4,500 MDMA pills from the Ton Organization, with delivery normally made to BUI in Philadelphia, Pennsylvania or Camden, New Jersey by PHUC VO and/or SERGIO CALDERA. BUI's distribution operation was based primarily in Philadelphia and in the southern New Jersey area.

22.     Defendant SOMBATH BUNKEUT was a large-scale marijuana and MDMA distributor and customer of the Ton Organization, who, beginning in the summer of 2004, purchased marijuana from it for distribution at a profit to other drug dealers. BUNKEUT purchased drugs on consignment and used the Ton Organization's codes in drug conversations. During the course of the conspiracy, BUNKEUT purchased and paid for in excess of 100 kilograms of marijuana and approximately 200 MDMA pills from the Ton Organization, with delivery normally made to BUNKEUT in Pennsylvania by PHUC VO. BUNKEUT's distribution operation was based primarily in Philadelphia.

23.     Defendant HIEU CHAU was a marijuana distributor and customer of the Ton

27

Organization, who, beginning in the summer of 2004, purchased marijuana from it for distribution at a profit to other drug dealers.  CHAU purchased drugs on consignment and used the Ton Organization's codes in drug conversations.  During the course of the conspiracy CHAU purchased and paid for in excess of 30 kilograms of marijuana from the Ton Organization, with delivery normally made to CHAU in Philadelphia by PHUC VO.  CHAU's distribution operation was based primarily in the southern New Jersey area.

24.    Members of the Ton Organization used self-help to avoid or minimize financial losses when its clients and customers failed to pay for marijuana or MDMA that it had distributed to them on consignment.  CHAN NGUYEN was employed by the Ton Organization, from time to time, to collect debts using such methods, threats, and force as he deemed necessary, including the discharge of firearms, to accomplish the collections.  Typically, NGUYEN was paid a percentage of the amounts of money he collected.

25.    Cash drug payments made by the customer co-conspirators would be pooled by members of the Ton Organization and used to pay for drug loads, with the cash being smuggled as described in Count Three.

All in violation of Title 21, United States Code, Section 846.

## COUNT FIVE

**(Possession of Methamphetamine and MDMA with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about November 7, 2004, in the Eastern District of Pennsylvania and elsewhere,

defendants

**BENJAMIN TON,**
        **a/k/a "BAO,"**
        **a/k/a 'STEVE NORTON,"**
**SERGIO CALDERA,**
        **a/k/a "THE MEXICAN GUY,"**
**XUYEN BAO VO,**
        **a/k/a "JOHN,"**
**PHUC VINH VO, and**
**DIANA RIVERA,**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing more than 500 grams,

that is, approximately 12.7 kilograms, consisting of approximately 55,000 pills, containing a

detectable amount of controlled substance, specifically:

    (a) methamphetamine, a Schedule II controlled substance, that is approximately 183 grams of pure methamphetamine, and

    (b) 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance, that is approximately 6, 945 grams of pure MDMA.

In violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(A)(viii) and Title 18, United States Code, Section 2.

## COUNT SIX

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about the autumn of 2003, in the Eastern District of Pennsylvania and elsewhere,

defendants

**THUONG MINH LE,**
**a/k/a "B.I.G.,"**
**a/k/a "TONY,"**
**a/k/a "LON,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance, weighing approximately 100

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

<u>**COUNT SEVEN**</u>

**(Possession of MDMA with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about March of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**THUONG MINH LE,**
**a/k/a "B.I.G.,"**
**a/k/a "TONY,"**
**a/k/a "LON,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 30,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT EIGHT

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about April of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**THUONG MINH LE,**
**a/k/a "B.I.G.,"**
**a/k/a "TONY,"**
**a/k/a "LON,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of more than 20,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT NINE

**(Possession of MDMA with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about June of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**THUONG MINH LE,**
**a/k/a "B.I.G.,"**
**a/k/a "TONY,"**
**a/k/a "LON,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 20,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

33

<u>                                            </u>**COUNT TEN**

**(Distribution of MDMA)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about the summer of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**THUONG MINH LE,**
**a/k/a "B.I.G.,"**
**a/k/a "TONY,"**
**a/k/a "LON,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, a mixture and substance consisting of approximately 9,500 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(a)(1)(C) and Title 18, United States Code, Section 2.

## COUNT ELEVEN

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about October of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**THUONG MINH LE,**
**a/k/a "B.I.G.,"**
**a/k/a "TONY,"**
**a/k/a "LON,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 10,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT TWELVE

**(Possession of MDMA with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about January of 2003, in the Eastern District of Pennsylvania and elsewhere, defendant

**SUONG THACH,**
**a/k/a "X-MEN,"**
**a/k/a "XUAN,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 20,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

36

## COUNT THIRTEEN

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendant

**SUONG THACH,**
**a/k/a "X-MEN,"**
**a/k/a "XUAN,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 30,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT FOURTEEN

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendants

**SUONG THACH,**
**a/k/a "X-MEN,"**
**a/k/a "XUAN,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance, weighing approximately 163 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT FIFTEEN

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendants

### SUONG THACH,
### a/k/a "X-MEN,"
### a/k/a "XUAN,"

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance, weighing approximately 150 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT SIXTEEN

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendants

**SUONG THACH,**
**a/k/a "X-MEN,"**
**a/k/a "XUAN,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance, weighing approximately 107 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT SEVENTEEN

**(Possession of MDMA with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about June of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**SUONG THACH,**
**a/k/a "X-MEN,"**
**a/k/a "XUAN,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 4,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

41

## COUNT EIGHTEEN

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of

Pennsylvania and elsewhere, defendant

**SUONG THACH,**
**a/k/a "X Men,"**
**a/k/a "Xuan,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 10

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

_____ **COUNT NINETEEN**

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about November 2, 2004, in the Eastern District of Pennsylvania and elsewhere,

defendant

**SUONG THACH,**
**a/k/a "X-MEN,"**
**a/k/a "XUAN"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 30

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

43

## COUNT TWENTY

**(Possession of MDMA with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about late July of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**THA THACH,**
**a/k/a "HUNG,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 1,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT TWENTY-ONE

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 31, 2004, in the Eastern District of Pennsylvania and elsewhere, defendants

**THA THACH,**
**a/k/a "HUNG," and**
**THUY A. LE**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance weighing approximately 10 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT TWENTY-TWO

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 5, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### THUY A. LE

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance weighing approximately 15 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT TWENTY-THREE

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 13 to14, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**THUY A. LE**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance weighing approximately 10 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT TWENTY-FOUR

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of

Pennsylvania and elsewhere, defendants

**THA THACH,**
**a/k/a "HUNG," and**
**THUY A. LE**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 82

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

## COUNT TWENTY-FIVE

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about mid-October of 2004, in the Eastern District of Pennsylvania and elsewhere, defendants

**THA THACH,**
**a/k/a "HUNG"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance weighing approximately 55 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT TWENTY-SIX

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about November 3 to 5, 2004, in the Eastern District of Pennsylvania and

elsewhere, defendants

> **THA THACH,**
>             **a/k/a "HUNG," and**
> **THUY A. LE,**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 25

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

## COUNT TWENTY-SEVEN

**(Distribution of Methamphetamine and MDMA within 1000' of a School and Playground)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about June 10, 2004, in the Eastern District of Pennsylvania and elsewhere,

defendants

> **BENJAMIN TON,**
> **a/k/a "BAO,"**
> **a/k/a "STEVE NORTON,"**
> **SERGIO CALDERA,**
> **a/k/a "THE MEXICAN GUY,"**
> **PHUC VINH VO, and**
> **TOAN KIM,**
> **a/k/a "THE SKINNY GUY,"**
> **a/k/a "SCOOBY,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, a mixture and

substance weighing more than 500 grams, that is, approximately 2.48 kilograms, consisting of

approximately 10,000 pills, containing a detectable amount of a controlled substance,

specifically:

> (a) methamphetamine, a Schedule II controlled substance, that is approximately 79 grams
> of pure methamphetamine, and

> (b) 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or
> "ecstasy," a Schedule I controlled substance, that is approximately 463 grams of pure
> MDMA,

within 1,000 feet of the real property comprising Our Lady of Mount Carmel School, a private

Catholic elementary school, located at 2329 S. Third Street, Philadelphia, PA, and within 1,000

feet of the real property comprising the Murphy Recreational Center, a public playground

operated by the City of Philadelphia that is located at Fourth and Shunk Streets and extends

between South Third and South Fourth Street and between the south side of Our Lady of Mount Carmel School and Oregon Avenue, and within 1,000 feet of the real property comprising the John H. Taggart public elementary school, located on South Fourth Street between Porter Street and Volmer Street, Philadelphia, PA, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii) and Title 18, United States Code, Section 2.

All in violation of Title 21, United States Code, Sections 860(a).

## COUNT TWENTY-EIGHT

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about summer of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**TOAN KIM,**
**a/k/a "THE SKINNY GUY,"**
**a/k/a "SCOOBY,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 9,500 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT TWENTY-NINE

### (Distribution of MDMA)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 26, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**TOAN KIM,**
**a/k/a "THE SKINNY GUY,"**
**a/k/a "SCOOBY,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, a mixture and substance consisting of approximately 930 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT THIRTY

### (Distribution of MDMA)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 28, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**TOAN KIM,**
**a/k/a "THE SKINNY GUY,"**
**a/k/a "SCOOBY,"**

knowingly and intentionally distributed, and aided and abetted the distribution of, a mixture and substance consisting of approximately 1000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

55

## COUNT THIRTY-ONE

### (Distribution of Marijuana)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 5, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**TOAN KIM,**
**a/k/a "THE SKINNY GUY,"**
**a/k/a "SCOOBY,"**

knowingly and intentionally distributed and aided and abetted the distribution of, a mixture and substance weighing approximately 15 pounds and containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT THIRTY-TWO

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about August 13 to 14, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**TOAN KIM,**
**a/k/a "THE SKINNY GUY,"**
**a/k/a "SCOOBY,"**

knowingly and intentionally distributed and aided and abetted the distribution of, a mixture and substance weighing approximately 10 pounds and containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

57

## COUNT THIRTY-THREE

### (Distribution of Marijuana)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about November 3 to 5, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**TOAN KIM,**
**a/k/a "THE SKINNY GUY,"**
**a/k/a "SCOOBY,"**

knowingly and intentionally distributed and aided and abetted the distribution of, a mixture and substance weighing approximately 25 pounds and containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

58

## COUNT THIRTY-FOUR

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about January and February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendant

### DANH MAC

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance, weighing approximately 25 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT THIRTY-FIVE

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about January and February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendant

### DANH MAC

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance, weighing approximately 55 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT THIRTY-SIX

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

## DANH MAC

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance weighing approximately 50 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

61

## COUNT THIRTY-SEVEN

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about early 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**CUONG PHAM,**
**a/k/a "C.M.D.,"**
**a/k/a "CAMDEN'S MOST DANGEROUS,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance consisting of approximately

10,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly

known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and

Title 18, United States Code, Section 2.

## COUNT THIRTY-EIGHT

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about June of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**CUONG PHAM,**
**a/k/a "C.M.D.,"**
**a/k/a "CAMDEN'S MOST DANGEROUS,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 1,600 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT THIRTY-NINE

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about mid-October of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**CUONG PHAM,**
**a/k/a "C.M.D.,"**
**a/k/a "CAMDEN'S MOST DANGEROUS,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 500 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT FORTY

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about January and February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendant

**MICHAEL NGUYEN,**
**a/k/a "TURTLE,"**
**a/k/a "MIKE,"**
**a/k/a "M,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance**,** weighing approximately 50 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2

65

## COUNT FORTY-ONE

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about January and February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendant

**MICHAEL NGUYEN,**
**a/k/a "TURTLE,"**
**a/k/a "MIKE,"**
**a/k/a "M,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance**,** weighing approximately 100 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

66

## COUNT FORTY-TWO

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about January and February of 2003, in the Eastern District of Pennsylvania and elsewhere, defendant

**MICHAEL NGUYEN,**
**a/k/a "TURTLE,"**
**a/k/a "MIKE,"**
**a/k/a "M,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance**,** weighing approximately 24 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT FORTY-THREE

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about June of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### NICK LAY

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 1,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT FORTY-FOUR

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**NICK LAY**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance weighing approximately 25 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT FORTY-FIVE

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of

Pennsylvania and elsewhere, defendant

**PHENG SENG,**
**a/k/a "PANG,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 20

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

70

## COUNT FORTY-SIX

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 7, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### PHENG SENG,
### a/k/a "PANG,"

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 100 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

71

## COUNT FORTY-SEVEN

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about October 25 through October 30, 2004, in the Eastern District of

Pennsylvania and elsewhere, defendant

**PHENG SENG,**
**a/k/a "PANG,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 25

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

## COUNT FORTY-EIGHT

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about the summer of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### TRI C. DOAN

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 5,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C) and Title 18, United States Code, Section 2.

73

## COUNT FORTY-NINE

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about October 30 to 31, 2004 in the Eastern District of Pennsylvania and

elsewhere, defendant

### TRI C. DOAN

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 30

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

74

<u>**COUNT FIFTY**</u>

**(Possession of MDMA with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about September 10, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**SANG MINH TIEU**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance consisting of approximately

2,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly

known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and

Title 18, United States Code, Section 2.

## COUNT FIFTY-ONE

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about mid-October of 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### SANG MINH TIEU

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 2,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT FIFTY-TWO

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about October 27, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### SANG MINH TIEU

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 1,500 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT FIFTY-THREE

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 26, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**ROBERT HAMPTON, JR.,**
**a/k/a "ROB,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 930 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

78

## COUNT FIFTY-FOUR

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about July 28, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### ROBERT HAMPTON, JR.,
### a/k/a "ROB,"

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance consisting of approximately 1000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and Title 18, United States Code, Section 2.

## COUNT FIFTY-FIVE

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about mid-2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**NHUT QUANG LE,**
**a/k/a "NICK,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance consisting of approximately

13,500 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly

known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and

Title 18, United States Code, Section 2.

## COUNT FIFTY-SIX

### (Possession of MDMA with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

In or about mid-2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### KEVIN LE

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance consisting of approximately

2,000 pills containing a detectable amount of 3,4-methylenedioxymethamphetamine, commonly

known as MDMA and/or "ecstasy," a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and

Title 18, United States Code, Section 2.

## COUNT FIFTY-SEVEN

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of

Pennsylvania and elsewhere, defendant

**HIEU BUI**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 40

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and

Title 18, United States Code, Section 2.

## COUNT FIFTY-EIGHT

### (Possession of Marijuana with Intent to Distribute)

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

**SOMBATH BUNKEUT,**
**a/k/a "SAM,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute of, a mixture and substance weighing approximately 10 pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D) and Title 18, United States Code, Section 2.

## COUNT FIFTY-NINE

**(Possession of Marijuana with Intent to Distribute)**

**THE GRAND JURY FURTHER CHARGES THAT:**

From on or about September 27 through September 30, 2004, in the Eastern District of

Pennsylvania and elsewhere, defendant

**HIEU CHAU,**
**a/k/a "HIEU GA,"**

knowingly and intentionally possessed with intent to distribute, and aided and abetted the

possession with intent to distribute of, a mixture and substance weighing approximately 17

pounds, containing a detectable amount of marijuana, a Schedule I controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D)and

Title 18, United States Code, Section 2.

84

## COUNT SIXTY

### (Conspiracy to Collect Extensions of Credit by Extortionate Means)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      From in or about late 2003 through mid-2004, in the Eastern District of

Pennsylvania and elsewhere, defendants

**BENJAMIN TON,**
**a/k/a "BAO,"**
**a/k/a "STEVE NORTON,"**
**SERGIO CALDERA,**
**a/k/a "THE MEXICAN GUY,"**
**PHUC VINH VO, and**
**CHAN NGUYEN,**
**a/k/a "PETER,"**

knowingly conspired and agreed together and with co-conspirators known and unknown to the

grand jury, to participate in the use of extortionate means within the meaning of Title 18, United

States Code, Section 891(7), to collect and attempt to collect extensions of credit, within the

meaning of Title 18, United States Code, Section 891, in violation of Title 18, United States

Code, Section 894, that is, drug debts.

### MANNER AND MEANS

It was part of the conspiracy that:

2.      Defendants BENJAMIN TON, SERGIO CALDERA, and PHUC VINH VO sold

illegal drugs on consignment to various customer co-conspirators, as set forth in paragraphs 1

through 10 of Count One, which are re-alleged and incorporated herein.  The customer co-

conspirators would make payments to the Ton Organization as they sold the drugs to their

clients.

85

3.      The Ton Organization used force and the threat of force to collect drug debts owed to it when its customers failed to make payment as required.

4.      The Ton Organization used CHAN NGUYEN, a reputed member of the Asian Boys street gang to collect drug debts owed to the Ton Organization.  The Asian Boys street gang had a reputation in the community for acts of violence, including extortions and home invasion robberies.  NGUYEN took advantage of his reputation for violence as a reputed member of the Asian Boys street gang to induce payment of debts owed to the Ton Organization.

5.      CHAN NGUYEN was paid a commission based upon a percentage, usually 20%, of the sums he collected for drug debts owed to the Ton Organization.

6.      CHAN NGUYEN used violence and threats of violence, including the firing of gunshots, to induce payment by customers who used drug debts to the Ton Organization when less coercive methods of persuasion failed.

7.      In or about late 2003, CHAN NGUYEN traveled to Louisiana to collect drug debts owed to the Ton Organization by other drug traffickers known to the grand jury who operated there.

8.      On or about January 21, 2004, CHAN NGUYEN fired one or more gunshots at the Philadelphia residence of a customer who owed a drug debt to the Ton Organization known to the grand jury.

9.      On or about February 17, 2004, CHAN NGUYEN fired one or more gunshots at the Philadelphia residence of another customer who owed a drug debt to the Ton Organization also known to the grand jury.

10.     On or about June 15, 2004, CHAN NGUYEN and SERGIO CALDERA

86

physically assaulted TOAN KIM, a person who they believed had stolen approximately 10,000

MDMA pills.

All in violation of Title 18, United States Code, Section 894(a)(1).

## COUNT SIXTY-ONE

### (Importation of a Firearm and Ammunition)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about November 7, 2004, in the Eastern District of Pennsylvania and elsewhere, defendant

### SERGIO CALDERA,
### a/k/a "THE MEXICAN GUY,"

knowingly, and without authorization by the Attorney General as provided in Title 18, United States Code, Section 925(d), imported and brought into the United States, and aided and abetted the importation and bringing into the United States of, a firearm and ammunition, to wit: a 9 mm Beretta pistol, serial number SZ000881, with one magazine containing 9 mm Ruger bullets, which was inserted in the magazine well of the pistol.

In violation of Title 18, United States Code, Section 922(l).

## <u>NOTICE OF FORFEITURE</u>

**(Drug Trafficking - 21 U.S.C. §§ 841, 846, 848, 860 and 963)**

1.      As a result of the violations of Title 21, United States Code, Section 848 (continuing criminal enterprise), Section 963 (conspiracy to import marijuana and MDMA), Section 846 (conspiracy to distribute marijuana and MDMA),  Section 841 (possession of marijuana, methamphetamine, and MDMA with intent to distribute, and distribution of marijuana and MDMA), and Section 860 (distribution of methamphetamine and MDMA within 1,000 feet of a school),  as set forth in Counts 1, 2, and 4 through 59 of this superseding indictment, the defendants

> **BENJAMIN TON,**
> > **a/k/a "BAO,"**
> > **a/k/a "STEVE NORTON,"**
> 
> **SERGIO CALDERA,**
> > **a/k/a "THE MEXICAN GUY,"**
> 
> **XUYEN BAO VO,**
> > **a/k/a "JOHN,"**
> 
> **PHUC VINH VO,**
> **DIANA RIVERA,**
> **THUONG MINH LE,**
> > **a/k/a "B.I.G.,"**
> > **a/k/a "TONY,"**
> > **a/k/a "LON,"**
> 
> **SUONG THACH,**
> > **a/k/a "X-MEN,"**
> > **a/k/a "XUAN,"**
> 
> **THA THACH,**
> > **a/k/a "HUNG,"**
> 
> **THUY A. LE,**
> **DANH MAC,**
> **TOAN KIM,**
> > **a/k/a "THE SKINNY GUY,"**
> > **a/k/a "SCOOBY,"**
> 
> **NHAN VO,**
> > **a/k/a "GIA,"**

a/k/a **"THE LITTLE BOY,"**
**MICHAEL NGUYEN,**
        a/k/a **"TURTLE,"**
        a/k/a/ **"MIKE,"**
        a/k/a/ **"M,"**
**NICK LAY,**
**PHENG SENG,**
        a/k/a **"PANG,"**
**TRI C. DOAN,**
**NHUT QUANG LE,**
        a/k/a **"NICK,"**
**KEVIN LE,**
**CUONG PHAM,**
        a/k/a **"C.M.D.,"**
        a/k/a/ **"CAMDEN'S MOST DANGEROUS,"**
**SANG MIHN THIEU,**
**HIEU BUI,**
**ROBERT HAMPTON, JR.,**
        a/k/a **"ROB,"**
**SOMBATH BUNKEUT,**
        a/k/a **"SAM," and**
**HIEU CHAU,**
        a/k/a **"HIEU GA,"**

shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, the

entirety of their interests in: (a) any property constituting, or derived from, any proceeds

obtained, directly or indirectly, as the result of such violations; and (b) any property used, or

intended to be used, in any manner or part, to commit, or to facilitate the commission, of such

violations; including but not limited to:

(1)       $53,406,083.12 in proceeds, including but not limited to:

(a)       $1,416.00 in United States currency, seized on November 7, 2004,

at  22 Bluestone Circle, Sicklerville, New Jersey;

(b)       $15,874.70 in funds seized on November 10, 2004, from business

checking account # 7857089291 held at Commerce Bank in the

90

name of LENA LOAN LE;

(c)     $15,000.00 in United States currency, seized on March 9, 2005, at

723 West Porter Street, Philadelphia, Pennsylvania; and

(d)     Toronto-Dominion Bank Check # 3740279 in the amount of

$7,000.00, seized on April 20, 2005, at 1650 Market Street, Ste.

3100, Philadelphia, Pennsylvania;

(2)     One 18 Karat white gold bracelet with 11 diamonds weighing

approximately 10.9 grams, seized on November 8, 2004, from safe deposit

box # 300 held at Commerce Bank, in the name of LENA LOAN LE;

(3)     the real property located at 22 Bluestone Circle, Sicklerville, New Jersey;

(4)     One Sig Sauer P239 handgun, bearing serial no. SA76850;

(5)     One Taurus PT111 handgun, bearing serial no. TGV-29345;

(6)     One Beretta 9-millimeter, semi-automatic pistol, bearing serial no.

SZ000881; and

(7)     One Taurus 9-millimeter handgun, bearing serial no. TVD75583.

2.     If any of the property described in paragraph 1, as a result of any act or

omission of the defendant,

(a)  cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without

difficulty;

then it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 1.

All pursuant to Title 21, United States Code, Section 853.

## NOTICE OF FORFEITURE

### (Money laundering - 18 U.S.C. § 1956)

1.      As a result of the violations of Title 18, United States Code, Section 1956,

as set forth in Count 3 of this superseding indictment, defendants

> **BENJAMIN TON,**
> **a/k/a "BAO,"**
> **a/k/a "STEVE NORTON,"**
> **SERGIO CALDERA,**
> **a/k/a "THE MEXICAN GUY,"**
> **XUYEN BAO VO,**
> **a/k/a "JOHN,"**
> **PHUC VINH VO,**
> **DIANA RIVERA, and**
> **LENA LOAN LE,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, the

entirety of their interests in any property, real or personal, involved in such offense, and any

property traceable to such property, including but not limited to:

(a)      $24,808,746.30 in drug proceeds involved in the money laundering

offense, including but not limited to:

(i)      $1,416.00 in United States currency, seized on November 7, 2004,

at 22 Bluestone Circle, Sicklerville, New Jersey;

(ii)      $15,874.70 in funds seized on November 10, 2004, from business

checking account # 7857089291 held at Commerce Bank in the

name of LENA LOAN LE;

(iii)      $15,000.00 in United States currency, seized on March 9, 2005, at

723 West Porter Street, Philadelphia, Pennsylvania;

(iv)   Toronto-Dominion Bank Check # 3740279 in the amount of

$7,000.00, seized on April 20, 2005, at 1650 Market Street, Ste.

3100, Philadelphia, Pennsylvania;

(b)   One 18 Karat white gold bracelet with 11 diamonds weighing

approximately 10.9 grams, seized on November 8, 2004, from safe deposit

box # 300 held at Commerce Bank in the name of LENA LOAN LE; and

(c)   the real property located at 22 Bluestone Circle, Sicklerville, New Jersey.

2.   If any of the property described in paragraph 1, as a result of any act or

omission of the defendant,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without

difficulty;

then it is the intent of the United States, pursuant to Title 18, United States Code, section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property described in paragraph 1.

All pursuant to Title 21, United States Code, Section 853, and Title 18, United

States Code, Section 982.

94

## NOTICE OF FORFEITURE

**(Conspiracy to Collect Extensions of Credit by Extortionate Means - 18 U.S.C. § 894)**

      1.    As a result of the violation of Title 18, United States Code, Section 894(a), as set forth in Count 60 of this superseding indictment, defendants

> **BENJAMIN TON,**
>       **a/k/a "BAO,"**
>       **a/k/a "STEVE NORTON,"**
> **SERGIO CALDERA,**
>       **a/k/a "THE MEXICAN GUY,"**
> **PHUC VINH VO, and**
> **CHAN NGUYEN,**
>       **a/k/a/ "PETER,"**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, the entirety of their interests in any property, real or personal, which constitutes or is derived from proceeds traceable such violation.

      2.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

      (a) cannot be located upon the exercise of due diligence;

      (b) has been transferred or sold to, or deposited with, a third party;

      (c) has been placed beyond the jurisdiction of the court;

      (d) has been substantially diminished in value; or

      (e) has been commingled with other property which cannot be divided without difficulty;

then it is the intent of the United States, pursuant to Title 18, United States Code, section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), incorporating Title 21, United

States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 1.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461.

**A TRUE BILL:**

_____
**FOREPERSON**

_____
**PATRICK L. MEEHAN**
**United States Attorney**
**Eastern District of Pennsylvania**

96